UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Midwest Medical Solutions, LLC, and
Hugh Bradley,

        Plaintiffs,

v.                                                  Case No. 19-cv-719 (JNE/ECW)

Exactech U.S., Inc.,                        ORDER

        Defendant.

Defendant Exactech U.S., Inc., ("Exactech"), terminated an agreement under which Plaintiffs Midwest Medical Solutions, LLC, and Hugh Bradley (collectively, "Midwest") served as Exactech's sales agents. Pursuant to the agreement, Exactech owes Midwest compensation in exchange for Midwest agreeing not to compete with Exactech for a period of time following the termination. The parties' present dispute centers on the proper formula for calculating the amount of that compensation.

Midwest has moved for entry of judgment on the sole claim currently pending, which seeks a declaratory judgment interpreting the disputed contract provision and setting the amount of compensation Exactech owes. Exactech has moved for leave to file a second amended pleading so that it can reinstate counterclaims it omitted from its operative pleading. For the following reasons, the Court will deny Exactech's motion, grant Midwest's motion, and enter judgment accordingly.

1

# BACKGROUND

Exactech manufactures orthopedic implants and surgical instruments. *Midwest Med. Sols., LLC v. Exactech U.S., Inc.*, 21 F.4th 1002, 1004 (8th Cir. 2021). Effective January 1, 2015, it entered into a Sales Agency Agreement ("Agreement") with Midwest. ECF No. 1-1 at 2. Pursuant to the Agreement, Midwest became Exactech's exclusive sales representative for Minnesota and North Dakota and portions of South Dakota and Wisconsin. *Id.* at 2–3, 23. By the end of 2018, Midwest was failing to meet its sales quota, and Exactech informed Midwest on February 5, 2019, that it would terminate the Agreement. *Midwest Medical*, 21 F.4th at 1002.

The Agreement contained a non-compete provision. It provided that, for a twelve-month period following termination, Midwest agreed to refrain from soliciting Exactech's customers or employees. ECF No. 1-1 at 4. In exchange, Exactech agreed to pay "Restricted Period Compensation" ("RPC") if certain conditions were met. Paragraph 5.D.ii of the Agreement provides, in relevant part:

> In the event this Agreement is terminated or not renewed by Exactech, then during each calendar month of the first six (6) months after such termination, Exactech will pay [Midwest] an amount equal to seven and one half percent (7.5%) of the total sales in the Territory during the trailing twelve (12) months ending on such termination date (the "Restricted Period Compensation").

ECF No. 1-1 at 4. The Agreement also contains an integration clause expressing that the Agreement "represents the entire understanding between the parties and cancels and supersedes all prior distribution agreements and other understanding existing at any time

2

between [Midwest] and Exactech regarding the sale and distribution of the Products." *Id.* at 16.

Midwest and Exactech dispute the amount of RPC due, based on their divergent interpretations of the formula for calculating that compensation. The parties agree that the "total sales in the Territory" during the relevant twelve-month period were approximately $4 million. *Midwest*, 21 F.4th at 1004. Midwest argues that Exactech owes it seven and one-half percent of that amount *each month* for six months. *Id.* Exactech argues that it owes only seven and one-half percent of the total sales figure, to be paid in six monthly *installments*. *Id.*

On March 15, 2019, Midwest filed the present lawsuit. ECF No. 1. A week later, it filed an amended complaint, ECF No. 6, which remains Midwest's operative pleading. The first amended complaint asserted three causes of action: violation of the Minnesota Termination of Sales Representatives Act (Count I); breach of contract (Count II); and a request for a declaratory judgment clarifying the correct formula for calculating Restricted Period Compensation pursuant to Paragraph 5.D.ii of the Agreement (Count III). ECF No. 6. Midwest moved for partial summary judgment on March 26, 2019, seeking summary judgment only on the declaratory judgment claim. ECF Nos. 7, 9.

Exactech filed an answer and counterclaim on May 9, 2019. ECF No. 32. It asserted numerous claims, including three that are relevant here: a request for a declaratory judgment either that Exactech owed no RPC, or that if it did, then the amount owed should be calculated based on Exactech's interpretation of Paragraph 5.D.ii as described above (Count I); reformation of Paragraph 5.D.ii based on mutual mistake

3

(Count II, pleaded in the alternative); and rescission of Paragraph 5.D.ii based on mutual or unilateral mistake (Count III, pleaded in the alternative). *Id.* at 18–22. Exactech alleged that, in drafts of the Agreement, Paragraph 5.D.ii had stated:

> In the event this Agreement is terminated or not renewed by Exactech, during each calendar month that Agency is obliged to comply with restrictions of Section 5(D)(ii), Exactech will pay Agency an amount equal to seven and one half percent (7.5%) of the total sales obtained by Agency during that same calendar month in the year immediately prior to termination (the "Restricted Period Compensation").

*Id.* at 14–15. Exactech alleged that, if the meaning of this provision differed in the final Agreement, that change in meaning would be the result of a typographical error:

> The parties never intended to alter the meaning of the draft contract language in the paragraph above. In the drafting process, the parties meant to change the phrase "in the year" (in the language providing for payment of 7.5% "of the total sales obtained by Agency during that same calendar month in the year immediately prior to such termination") to "during the trailing twelve months." In that process, the parties unintentionally omitted the language that expressly referred to "sales obtained by the Agency during that same calendar month."

*Id.* at 16.

On June 13, 2019, this Court granted in part and denied in part Midwest's motion for partial summary judgment on Midwest's declaratory judgment claim. ECF No. 40. The Court determined that Exactech was required to pay RPC. *Id.* at 7. But the Court rejected Midwest's interpretation of the formula for calculating that compensation and instead adopted Exactech's interpretation, reasoning that Midwest's interpretation would lead to a harsh and absurd result and a windfall for Midwest. *Id.* at 7–9. The Court did not enter judgment at that time.

One week later, Exactech filed an amended answer and counterclaim. ECF No. 41. Citing no authority, Exactech asserted that the order on partial summary judgment

> operates as law of the case and moots several counts of Exactech's previously-filed counterclaim. Exactech therefore does not re-bring those claims, without prejudice to re-bringing them in a future filing in light of [Midwest's] declaration that it would seek an appeal in this case. Exactech meanwhile anticipates a motion for final summary judgment with respect to [Midwest's] claims.

ECF No. 41 at 1–2. The amended counterclaim asserted only claims related to an alleged breach of confidentiality. Midwest filed a motion to dismiss the counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 48. The Court denied that motion. ECF No. 59. Midwest also filed an answer to the amended counterclaim. ECF No. 63. Those documents did not mention Exactech's omission of the reformation and rescission claims. ECF Nos. 48, 63.

After the Court denied the parties' motions for summary judgment on Exactech's counterclaim, the Court scheduled a jury trial for March 22, 2021. ECF Nos. 90–91. But on February 12, 2021, the parties filed a stipulation consenting to entry of judgment so that Midwest could appeal this Court's interpretation of the RPC language in Paragraph 5.D.ii. ECF No. 96. The parties stipulated "to the dismissal with prejudice of all remaining claims and counterclaims [in] this matter with the exception of Count III of Plaintiffs' First Amended Complaint," *id.* at 2, which sought an interpretation of Paragraph 5.D.ii. Based on the parties' stipulation, the Court entered judgment against Exactech on Midwest's declaratory judgment claim, in an amount that the parties

calculated based on the Court's (and Exactech's) interpretation of Paragraph 5.D.ii, and the Court dismissed the remaining claims with prejudice. ECF No. 102 at 2–3.

The U.S. Court of Appeals for the Eighth Circuit reversed, rejecting this Court's interpretation of the RPC language in Paragraph 5.D.ii. The Court of Appeals held that the language was unambiguous and that nothing in the remainder of the Agreement contradicted its plain meaning. *Midwest*, 21 F.4th at 1006. The Court of Appeals also observed that "there [was] no evidence of the parties' intent with respect to the amount of RPC owed other than the unambiguous language of the relevant provision itself." *Id.* It further observed that, "though the plain language may result in a large sum paid to Midwest by Exactech as RPC, there is no evidence—other than the parties' self-serving arguments—as to why this amount is or is not an absurd result." *Id.* at 1007. The Court of Appeals therefore found itself "bound to give Paragraph 5.D.ii its plain and ordinary meaning," *id.*, which aligns with Midwest's interpretation. The Court of Appeals "reverse[d] and remand[ed] the case for further proceedings consistent with this opinion." *Id.*

In a footnote, the Court of Appeals also stated that, at oral argument, "counsel for Exactech expressed the view that the reformation and rescission counterclaims are still in the case." *Id.* at 1005 n.1. It "[left] it to the district court to determine the status of any remaining counterclaims upon remand." *Id.*

Upon remand, Midwest moved for entry of judgment on its declaratory judgment claim. ECF No. 114. Exactech filed a memorandum in opposition, ECF No. 122, and Midwest replied, ECF No. 124. Exactech moved for leave to file a second amended

6

answer and counterclaim. ECF Nos. 116, 118. Midwest filed a memorandum in opposition to Exactech's motion. ECF No. 123.

## DISCUSSION

### I. Exactech's Motion for Leave to File a Second Amended Pleading

Exactech seeks leave to file a second amended pleading so that it can reassert counterclaims for reformation and rescission of Paragraph 5.D.ii of the Agreement. The Court will begin by considering whether these claims currently are in the case, as well as whether they are barred by the parties' stipulation to dismiss certain claims. Finding that they are neither part of the case nor precluded by stipulation, the Court will then consider whether the requested leave is appropriate. It is not.

### A. Status of the reformation and rescission claims

The Eighth Circuit noted that Exactech, at oral argument, had expressed the view that its counterclaims for reformation and rescission were still in the case. The Eighth Circuit wrote in a footnote that it would "leave it to the district court to determine the status of any remaining counterclaims upon remand." *Midwest*, 21 F.4th at 1005 n.1.

"It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). Exactech's operative pleading—its first amended answer and counterclaim—expressly omits the original counterclaim's reformation and rescission claims. ECF No. 41 at 1–2. The reformation and rescission claims therefore ceased to be part of the case when the first amended counterclaim superseded the original as of June 20, 2019. *See Atlas*, 209 F.3d at 1067.

7

That means that the claims for reformation and rescission were not part of the case when the parties stipulated to dismiss the "remaining claims and counterclaims" with prejudice in February 2021. *See* ECF No. 96. Midwest nonetheless argues that the stipulation precludes Exactech from reasserting the reformation and rescission claims because those claims were "remaining" in the litigation even if they were not "pending." ECF No. 123 at 15. Midwest offers no authority to support that interpretation of the term "remaining." Since the amended complaint superseded the original and left it "without legal effect," *see Atlas*, 209 F.3d at 1067, the claims omitted from Exactech's amended pleading could not have "remain[ed]" in the litigation at the time of the stipulation. The stipulation therefore does not preclude Exactech from reviving those claims.

### B.    Rule 16

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings. Fed. R. Civ. P. 15. But the scheduling order issued pursuant to Rule 16 set a deadline to amend pleadings of July 15, 2019. ECF No. 46 at 4. "[W]hen a Rule 15 motion is brought after the court-ordered deadline, the court must conduct a 'good cause' analysis under Rule 16" to determine whether it is appropriate to amend the scheduling order so as to allow a party to seek relief under Rule 15. *Shank v. Carleton Coll.*, 329 F.R.D. 610, 613 (D. Minn. 2019); *see also Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (finding error where district court did not apply the Rule 16(b) good cause standard before analyzing a motion for leave to file an amended pleading brought nearly 18 months after the deadline to do so). The party seeking relief under Rule 16(b)—here,

Exactech—bears the burden to show good cause for amending a scheduling order to allow an untimely motion to amend the pleadings. *See Sherman*, 532 F.3d at 716.

"The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." *Id.* (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)). Only if the movant has shown diligence need the court consider other relevant factors, such as prejudice to the nonmovant. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). A court may find that a party has been diligent where "a change in the law, the discovery of new facts, or some other change in circumstances" makes a claim or defense more viable after the deadline for amending pleadings. *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 949 (8th Cir. 2012) (citing *Sherman*, 532 F.3d at 718).

Exactech suggests that the Eighth Circuit's reversal of this Court's interpretation of the Agreement worked a "change in the law," or at least a change in the law of the case. But no change in the law occurred. The Eighth Circuit merely applied existing law to interpret the Agreement. *See Midwest Medical*, 21 F.4th at 1005–06 (8th Cir. 2021) (reciting principles of Minnesota contract law). That fact distinguishes this case from the cases Exactech cites, in which courts found good cause to amend scheduling orders where new rules of law were announced while the cases were pending. *See Shank*, 329 F.R.D. at 615 ("The state of the law in the District regarding Rule 15 and Minn. Stat. § 549.191 was in flux around the time of the original motion-to-amend deadline . . . . This unsettled, changing legal landscape provided a basis for Shank's reasonable belief that she needed 'clear and convincing' evidence before filing her motion."); *Pauling v. Globe-*

9

*Democrat Pub. Co.*, 362 F.2d 188, 198 (8th Cir. 1966) (affirming judgment of district court, which had granted defendant leave to amend its answer at the commencement of trial to add a new defense to defamation announced by the U.S. Supreme Court's decision seven days prior in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)).

Nor was the reversal a "change in circumstances" affecting the viability of the omitted claims, *see Hartis*, 694 F.3d at 949, because no circumstances ever required Exactech to eliminate those claims from its operative pleading. Exactech insists otherwise. In its amended counterclaim, it supposed that the order on partial summary judgment mooted the reformation and rescission claims. ECF No. 41 at 1. Therefore, according to Exactech, leaving those claims in its operative pleading would have been frivolous.

Exactech was mistaken. First, the order on partial summary judgment was not final—so, contrary to Exactech's assertions, the law of the case never barred the reformation and rescission claims. Only "decisions made by appellate courts and final decisions made by district courts that have not been appealed" create "law of the case"; interlocutory orders do not. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 830 (8th Cir. 2008) (quoting *First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd.*, 477 F.3d 616, 620 (8th Cir. 2007)). This Court did not enter judgment on the June 2019 order granting partial summary judgment, ECF No. 40, until March 2021, ECF No. 103. The order therefore did not acquire finality until more than a year after Exactech filed the amended counterclaim omitting the reformation and rescission claims, ECF No. 41, and more than a year after the deadline for amended pleadings passed, ECF No. 46. *See* Fed.

10

R. Civ. P. 54(b) (providing that, unless a court directs entry of final judgment as to one or more but not all claims or parties, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment . . . ."). Since the June 2019 order on partial summary judgment was not final, it did not establish the law of the case at any time before the amended pleading deadline. *See Gander*, 540 F.3d at 830. The Eighth Circuit's statement of the law of the case thus makes the reformation and rescission claims no more viable than they already were before the amended pleading deadline.

Second, Exactech could have pleaded the reformation and rescission claims in the alternative—as it originally did, ECF No. 32.[1] *See* Fed. R. Civ. P. 8(d)(2); *Simmons v. Orion Ins. Co.*, 366 F.2d 572, 574–75 (8th Cir. 1966) ("[T]he Federal Rules of Civil Procedure do not require consistency of pleadings." (internal quotation omitted)). Although the order on partial summary judgment sided with Exactech's interpretation of Paragraph 5.D.ii and therefore rejected a condition for the alternatively-pled reformation and rescission claims, *see* ECF No. 32 at 20–21, the Court did not forbid Exactech from pursuing those claims or require Exactech to delete them from its pleading, ECF No. 40.

---

[1] Exactech's first amended counterclaim noted that Exactech would attempt to reintroduce certain claims if it received an adverse decision on appeal. ECF No. 41 at 1–2. That statement defeats Exactech's suggestion that it lacked crucial information—the Eighth Circuit's interpretation of the Agreement—supporting the claims it now proposes to reassert. The Eighth Circuit's interpretation was not only foreseeable but also, in fact, foreseen. Exactech's failure to plead the claims was not due to a lack of information.

The non-final nature of the June 2019 order and the availability of alternative pleading underscore the voluntariness of Exactech's omission of the reformation and rescission claims. That voluntariness distinguishes this case from cases in which parties have amended claims upon facing a "Hobson's choice" between amending a pleading and suffering a severe result such as dismissal, prompting courts to refer to superseded pleadings—and even then, only for narrow purposes not applicable here. *Cf. In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) (holding that a superseded original complaint governed the question of federal jurisdiction, where the plaintiff had filed an amended complaint to avoid dismissal); *Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1241 (8th Cir. 1995) (examining the question of whether a case was properly removed to federal court with reference to a superseded original pleading, where a district court order forced a plaintiff to choose between amending the complaint to add federal claims or risking dismissal). Exactech faced no Hobson's choice here. Its voluntary omission is no reason to find good cause for leave to file an amended pleading.

For these reasons, Exactech has not shown diligence in attempting to meet the scheduling order's requirements. That conclusion precludes the finding of "good cause" necessary to justify amending the scheduling order to allow for an amended pleading.[2]

---

[2] Exactech argues that Rule 1 of the Federal Rules of Civil Procedure—instructing courts to "construe[], administer[], and employ[]" the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding"—gives this Court inherent power to allow Exactech to pursue its reformation and rescission claims. But none of the cases Exactech cites suggest that Rule 1 empowers a court to allow leave to file an untimely amended pleading where a party fails to meet the Rule 16 standard. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006); *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314,

*See Sherman*, 532 F.3d at 716–17; Fed. R. Civ. P. 16(b)(4).  The Court will deny Exactech's motion.

## II.  Midwest's Motion for Entry of Judgment

Midwest moves for entry of judgment on Count III of its First Amended Complaint.  Count III seeks a declaratory judgment establishing the formula for Restricted Period Compensation that Exactech owes to Midwest.  Exactech opposes the motion, arguing that it should be allowed to conduct discovery to support its argument that the plain meaning of the Sales Agency Agreement will produce a harsh and absurd result and a windfall for Midwest.  Exactech contends that the Eighth Circuit determined only that the record on appeal contained insufficient evidence to reach that conclusion.  And, indeed, the absence of evidence did inform the appellate court's interpretation.  *See Midwest*, 21 F.4th at 1007 ("[T]hough the plain language may result in a large sum paid to Midwest by Exactech as RPC, there is no evidence—other than the parties' self-serving arguments—as to why this amount is or is not an absurd result. As such, we are bound to give Paragraph 5.D.ii its plain and ordinary meaning.").

But the time to put forward such evidence has passed.  Exactech complains that Midwest moved for summary judgment on the declaratory judgment claim just eleven days after filing this litigation—long before fact discovery closed in October 2019.  But Exactech never invoked Federal Rule of Civil Procedure 56(d), pursuant to which

---

1320-21 (Fed. Cir. 2016); *Cutsforth, Inc. v. LEMM Liquidating Co., LLC*, No. CV 12-1200 (SRN/LIB), 2018 WL 847763, at *2–3 (D. Minn. Feb. 13, 2018) (noting that "the exercise of an inherent power cannot conflict with any express grant of or limitation on the district court's power contained in a rule or statute").

13

Exactech might have obtained deferred consideration of Midwest's motion for partial summary judgment while Exactech sought discovery on facts essential to opposing that motion. Instead, in opposing summary judgment, Exactech based its "absurd result" argument on a comparison between the size of Midwest's claimed RPC and the size of Midwest's commission as provided elsewhere in the Agreement. ECF No. 23 at 18–20. Exactech now demands discovery without offering even a general indication of what information or evidence it might seek. Nor does it state how such information or evidence could establish that the plain-language interpretation of the Agreement works a harsh or absurd result. The Court observes no basis for reopening discovery.

Given that the Court will deny Exactech's motion for leave to file an amended pleading, Midwest's claim for a declaratory judgment interpreting Paragraph 5.D.ii is the only live claim in this litigation. *See* ECF No. 96 (stipulating to dismissal with prejudice of "all remaining claims and counterclaims [in] this matter with the exception of Count III of Plaintiffs' First Amended Complaint[.]"). The Eighth Circuit has confirmed that Paragraph 5.D.ii is unambiguous. *Midwest*, 21 F.4th at 1006. The construction of an unambiguous contract is a question of law. *Qwinstar Corp. v. Anthony*, 882 F.3d 748, 752 (8th Cir. 2018), *as amended* (Feb. 26, 2018). And the Eighth Circuit has answered that question, holding that Paragraph 5.D.ii is entitled to its plain meaning. *Midwest*, 21 F.4th at 1007. As Exactech has presented no legal authority or any other reason that would justify reopening discovery to advance a different interpretation of Paragraph 5.D.ii, nothing remains for this Court to do other than to enter a declaratory judgment and, at this Court's discretion, to craft a damages award to effectuate that judgment. *See*

*BancInsure, Inc. v. BNC Nat'l Bank, N.A.*, 263 F.3d 766, 772 (8th Cir. 2001) (recognizing that "district courts have broad power under 28 U.S.C. § 2202 to craft damages awards in declaratory judgment actions to effectuate their judgment").

The Court will issue a declaratory judgment interpreting Paragraph 5.D.ii consistently with the Court of Appeals' opinion and Midwest's reading of the language at issue. Pursuant to that interpretation, the Court calculates the Restricted Period Compensation that Exactech owes Midwest as $1,722,463.38.[3] Midwest also seeks prejudgment interest. Neither in Exactech's memorandum opposing entry of judgment nor at oral argument did Exactech dispute Midwest's method of calculating prejudgment interest. The Court will award prejudgment interest in the amount of $518,862.61, based on the figures Midwest has provided and Minnesota Statutes Section 549.09. After subtracting a partial payment of $336,340.94 tendered on April 21, 2021, the total amount that Exactech owes to Midwest stands at $1,904,985.08 as of the date of this judgment.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

---

[3] The parties agreed that the amount of RPC owed to Exactech pursuant to Exactech's interpretation of the RPC formula was $287,077.23. ECF No. 101; ECF No. 102 at 1. The RPC formula as interpreted by Midwest and the Court of Appeals is simply six times Exactech's interpretation of the formula. *Compare* ECF No. 114 at 2 (expressing RPC owed as 7.5% × $3,827,696.46 × 6), *with* ECF No. 23 at 5–6 (asserting that RPC should be calculated without multiplying by six). The RPC owed based on the plain-language interpretation of the formula is therefore the product of $287,077.23 and 6, which equals $1,722,463.38.

15

1. Defendant's Motion for Leave to File a Second Amended Answer and Counterclaim [ECF No. 116] is DENIED.

2. Plaintiffs' Motion for Entry of Judgment [ECF No. 114], as amended [ECF No. 129], is GRANTED to the extent consistent with this order.

3. Pursuant to Paragraph 5.D.ii of the parties' Sales Agency Agreement [ECF No. 1-1], Defendant is required to pay Restricted Period Compensation calculated as the product of six (6) times seven and one-half percent (7.5%) times the total sales in the Territory during the twelve months immediately preceding the date of termination of the Agreement.

4. Judgment shall be entered against Defendant on Count III of Plaintiffs' First Amended Complaint. The Court awards Plaintiffs $1,904,985.08.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 26, 2022         s/ Joan N. Ericksen
                            JOAN N. ERICKSEN
                            United States District Judge